# Commonwealth *v.* Watson, Appellant.

*Criminal law—Murder—Self-defense—Charge of court.*

On the trial of an indictment for murder where the evidence shows that the deceased was stabbed with a knife by the prisoner during a fight, and the prisoner claims that it was done in self-defense and offers evidence which, if believed, would justify a finding that he used the knife only when under a reasonable apprehension of loss of life or great bodily harm so imminent at the moment that he was justified in believing that what he did was necessary to save himself, the prisoner is entitled to adequate instructions on the law relating to self-defense, free from any expression on the part of the trial judge leading the jury to believe that they ought to accept as an undisputed fact that death had resulted from a quarrel which the prisoner could or should have avoided.

Argued Oct. 2, 1911.   Appeal, No. 170, Jan. T., 1911, by George Watson, defendant, from judgment of O. & T. Lancaster Co., Nov. T., 1910, No. 55, on verdict of guilty of murder of the first degree in case of Commonwealth v. George Watson and Julie Harris.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Indictment for murder.   Before LANDIS, P. J.

At the trial it appeared that George Watson, the defendant, a colored man, resided in the borough of Columbia, Pennsylvania, and that on November 14, 1910, at his own house a quarrel arose between him and Isaac Makle, during which Makle was killed by a knife in the hands of Watson.   Watson claimed that the act was done in self-defense.   Other facts appear by the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

*Errors assigned* were (1) portion of charge, quoted in the opinion of the Supreme Court, and (2, 4) answers to defendant's fifth and seventh points, also quoted in the opinion of the Supreme Court.

*Frank S. Groff*, with him *Cleon N. Berntheisel*, for appellant, cited: Com. v. Drum, 58 Pa. 9; Murray v. Com., 79 Pa. 311; Pistorius v. Com., 84 Pa. 158; Com. v. McGowan, 189 Pa. 641; Com. v. Johnson, 213 Pa. 432; McDermott v. State, 89 Ind. 187; Com. v. Palmer, 222 Pa. 299.

*Sumner V. Hosterman*, assistant district attorney, and *J. W. Johnson*, district attorney, for appellee, cited: Com. v. Palmer, 222 Pa. 299; Com. v. Mitchka, 209 Pa. 274; Com. v. Johnson, 213 Pa. 432; Com. v. McKwayne, 221 Pa. 449.

OPINION BY MR. JUSTICE BROWN, January 2, 1912:

The sole plea of the prisoner to escape conviction on the indictment charging him with wilful and deliberate murder was self-defense, and, on this appeal from the judgment against him on the verdict finding him guilty of murder of the first degree, his only complaint is that the jury were not adequately instructed on the law relating to his plea. The inadequate instruction of which he complains was the following: "Did Watson stab Makle and kill him in self-defense? If he did, then he is entitled to a verdict of not guilty. In this connection I desire to say that one who is attacked is at all times entitled to defend himself. He, however, must only use such force as is necessary for that purpose, and he cannot enter into a quarrel and kill a man and claim that it is self-defense when there was no necessity for his engaging in it, and if he could have avoided entirely the contest and also the necessity of using such desperate measures. Even if he was forced into it, if it was not necessary for him to kill, if by other means he could defend himself, then the law says that he can only use the means that are necessary to protect himself, and no more, and when he goes beyond that step, then he becomes an aggressor." This is all that was said by the learned trial judge as to the plea of self-defense in a charge that was otherwise comprehensive.

It may be that the prisoner and the deceased had engaged in a quarrel and the former killed the latter in the fight between them, but this was a material question for the jury alone at the very threshold of their consideration of the case. They may, however, have been led to believe, by what was said in the charge and in the answers to the prisoner's fifth and seventh points, that they were to regard his voluntary participation in a quarrel with Makle as an admitted or undisputed fact. After merely stating in his general charge that, if the prisoner killed the deceased in self-defense, he ought to be acquitted, because one who is attacked is at all times entitled to defend him-

self, using no more force than necessary for that purpose, the learned trial judge proceeded immediately to say "he cannot enter into a quarrel and kill a man and claim that it is self-defense when there was no necessity for his engaging in it, and if he could have avoided entirely the contest and also the necessity of using such desperate measures." By the prisoner's fifth point the court was asked to instruct the jury that "where a man is assailed by another and has reasonable ground to fear for his life, or to apprehend grievous bodily harm, whether he is really in danger or not, and by reason of the suddenness of the attack he had no means of retreat, the stabbing of the assailant by the person assailed is justifiable." While this point was affirmed, the affirmance was followed by the qualification, "but by this we do not mean that, when two men enter into a fight, and one of them secures a knife and kills his adversary, he can then claim that it was done in self-defense;" and, in answering the prisoner's seventh point, the unequivocal words of the trial judge were, "They entered into the quarrel, and, because it happened to take place in Watson's house, he was not, for that reason, warranted in procuring a knife and killing Makle." In view of these last words used by the trial judge, the jury in all probability regarded the prisoner's plea of self-defense as unavailing, for they had been instructed that such plea cannot avail one who kills another in a quarrel which he could have avoided. If the version of what occurred at the time Makle was killed, as given by Watson when on the witness stand, was to be believed by the jury, he had not voluntarily engaged in a fight with Makle, but, on the contrary, the latter had, without any provocation, aggressively and dangerously assailed him in his own home, threatening to kill him, and, after having thrown him down and gotten upon his prostrate body, had sworn he would knock his brains out with a large seashell held in one hand while he clutched the prisoner's throat with the other. It was at this juncture, according to Watson's testimony, that he used the knife

which he had grabbed from a desk a moment before, after Makle had thrown two glasses at him and was threateningly advancing towards him.   If Watson's story was to be believed—and his credibility was exclusively for the jury—his plea of self-defense might have saved him from conviction, but it is reasonably clear that this defense was in effect neutralized by the court's instructions, and the judgment cannot, therefore, be permitted to stand.

The jury should have been instructed that their first duty in passing upon the question of the prisoner's guilt was to determine, from all the evidence, whether there had been a quarrel or fight between him and the deceased which he could have avoided, and, if the killing resulted from it, he could not plead self-defense as a ground for acquittal; but if, on the other hand, they believed that Makle was killed under the circumstances as detailed by the prisoner, they could fairly find that what he did was done under a reasonable apprehension of loss of life or great bodily harm, so imminent at the moment that he was justified in believing that what he did was necessary to save himself, and, if they should so find, his plea of self-defense would save him from conviction: Logue v. Com., 38 Pa. 265; Murray v. Com., 79 Pa. 311; Pistorius v. Com., 84 Pa. 158; Com. v. McGowan, 189 Pa. 641; Com. v. Johnson, 213 Pa. 432.   The case clearly called for adequate instructions on the well-settled law relating to self-defense, free from any expression leading the jury to believe that they ought to accept as an undisputed fact that death had resulted from a quarrel which the prisoner could or should have avoided.   The first, second and fourth assignments of error are sustained and the judgment is reversed with a venire facias de novo.