## BUESSEL v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit. April 16, 1919.)

### No. 178.

1. CRIMINAL LAW ☞1134(7)—REVIEW—APPELLATE PROCEDURE—USE OF WRONG REMEDY.

Act Sept. 6, 1916, § 4 (Comp. St. § 1649a), providing that no reviewing court shall dismiss an appeal solely because a writ of error should have been sued out, but that "when such mistake or error occurs it shall disregard the same and take the action which would be appropriate if the proper appellate procedure had been followed," does not authorize an appellate court, where a criminal case has been brought up by appeal, to exercise the same comprehensive powers of review which it is entitled to exercise when an appeal is rightfully taken, and review both the law and facts.

2. CRIMINAL LAW ☞1090(1)—APPELLATE PROCEEDINGS—BILLS OF EXCEPTIONS.

A statute which authorizes a writ of error to be sued out thereby allows a bill of exceptions to be signed and used in connection therewith, for it is only through such bill that the rulings of the judge made at the trial become a part of the record to be reviewed.

3. CRIMINAL LAW ☞1090(19)—APPELLATE PROCEEDINGS—RECORD.

Where there has been an actual trial, the parties are not at liberty to substitute a written stipulation or agreed statement of facts as to what occurred at the trial in lieu of the bill of exceptions required.

4. CRIMINAL LAW ☞1090(8, 14)—APPELLATE PROCEEDINGS—RECORD.

The general rule has been that in actions at law evidence introduced or offered and rejected at the trial, and rulings thereon, can be brought before the appellate court only by bill of exceptions, and unless a statute otherwise provided such bill has been necessary to bring into the record for review the instructions and requests to charge; and such rules apply to criminal as well as to civil cases.

5. CRIMINAL LAW ☞1091(10)—APPELLATE PROCEEDINGS—REVIEW.

The rule has been elementary, and applicable in criminal proceedings as well as in civil, that a ruling of the trial court upon the admission of evidence will not be reviewed in the appellate court, unless the bill of exceptions shows that an exception was taken thereto.

6. COURTS ☞356—FEDERAL COURTS—CONFORMITY STATUTE.

The Conformity Statute (Comp. St. § 1537) has no application to bills of exceptions, or to the mode of reviewing a decision once made in a federal district court.

7. CRIMINAL LAW ☞1090(2)—APPELLATE PROCEEDINGS—RECORD.

Judicial Code, § 269, as amended by Act Feb. 26, 1919, requiring appellate courts to "give judgment after an examination of the entire record before the court without regard to technical errors, defects or exceptions which do not affect the substantial rights of the parties," does not dispense with the necessity of a bill of exceptions to bring into the record matters which would not otherwise be a part thereof; but the record to which the act refers is that which is legally the record.

8. CRIMINAL LAW ☞1090(5)—APPELLATE PROCEEDINGS—RECORD.

A demurrer to an indictment is a part of the record proper, and is not dependent on a bill of exceptions.

9. CRIMINAL LAW ☞984—SENTENCE ON DIFFERENT COUNTS.

Unless a court, imposing sentence under each of several counts in an indictment, otherwise directs, the sentences under all run concurrently, and the fact that one count is defective does not entitle defendant to release from imprisonment.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. INDICTMENT AND INFORMATION ☞203—VERDICT ON GOOD AND BAD COUNTS.
    Where an indictment contains good and bad counts. a general verdict of
    guilty will be referred to the good counts, if sustained by the evidence,
    and the judgment will be affirmed.

11. COURTS ☞356—APPEALS IN EQUITY—RECORD OF EVIDENCE.
    Under equity rule 75b (198 Fed. xl, 115 C. C. A. xl), until the statement
    of the evidence in an equity case has been approved by the trial court
    or judge, it is not a part of the record for purposes of appeal.

12. CRIMINAL LAW ☞1090(1)—"BILL OF EXCEPTIONS"—DEFINITION.
    "A bill of exceptions" is a formal statement in writing of the exceptions
    duly taken at the trial to the decisions and instructions of the judge, with
    as much of the testimony as is necessary to enable the court to say whether
    error at law was committed in respect to the particular decisions or in-
    structions as to which the exceptions were taken.

    [Ed. Note.—For other definitions, see Words and Phrases, First and
    Second Series, Bill of Exceptions.]

    Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District
of Connecticut.

Criminal prosecution by the United States against Theodore Bues-
sel. Judgment of conviction, and defendant brings error. Affirmed.

Joseph P. Tuttle, of Hartford, Conn., for plaintiff in error.

John F. Crosby, U. S. Atty., and George H. Cohen, Sp. Asst. U. S.
Atty., both of Hartford, Conn.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. This is an indictment under Espionage
Act June 15, 1917, c. 30, tit. 1, § 3, 40 Stat. 219, as amended by Act
May 16, 1918, c. 75, § 1, 40 Stat. 553 (Comp. St. 1918, § 10212c). The
indictment upon which the defendant was originally placed on trial
contained a number of counts, but all except the third, fourth, and
seventh were withdrawn from the consideration of the jury.

The third count alleges that the defendant, when the United States
was at war, uttered disloyal and abusive language about the form of
government, and did by word support and favor the cause of Germany,
and by word oppose the cause of the United States therein. It alleges
in particular the following language:

"That the present war in which the United States is engaged is nothing
but a Wall Street affair; that Germany is the most wonderful country in the
world, and it could never be crushed by any other nations; that the war
would last four or five years more, as the Germans were a marvelous people
and the other nations could never cope with them; that Germany could
easily crush the Allies, because the Germans worked under one general, Hin-
denburg, and the Allies were deficient in maneuvers, and the United States
would have to fight the battle alone; that it was unreasonable and unjust for
the United States to have gone into the present war; that in Germany, public
affairs like the army and navy were run by men, but in this country they
were run by women, Mrs. Wilson, for example; that the material written in
the newspapers is ridiculous, that the Kaiser is not pictured as he truly is, that
he is a wonderfully clever man, good and just, well versed in all the arts, and
that he would be a wonderful man, even if he were not the Kaiser; that he
was very indignant when asked to subscribe to the Red Cross, that he did not
believe in it, and that those collecting for it received a commission; that

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Japan and Mexico would soon be in this war against this country; that the schools in this country were failures."

The fourth count alleges that the defendant uttered—

"disloyal, scurrilous and abusive language about the military and naval forces of the United States, and language intended to bring the military and naval forces of the United States into contempt, scorn, contumely, and disrepute, and in particular, the following language, to wit: That the army of the United States is not loyal, and that almost any of our soldiers could be bought for a very small sum; but that the army of the Kaiser was absolutely loyal, and that the men over there would give their lives if necessary in response to the Kaiser's wish, but that no dependence could be placed on the American soldier."

The seventh count alleges that the defendant uttered—

"disloyal and abusive language about the flag of the United States, and language intended to bring the flag of the United States into contempt, scorn, contumely, and disrepute, and in particular, the following language, to wit (speaking to a person wearing a flag pin and referring to the flag pin): 'Remove that thing from your coat. I do not like it.'"

That portion of the Espionage Act which is involved in this case reads as follows:

"Whoever, when the United States is at war, shall willfully utter, print, write or publish any disloyal, profane, scurrilous or abusive language about the form of government of the United States, or the Constitution of the United States, or the military or naval forces of the United States, * * * or any language intended to bring the form of government of the United States, or the Constitution of the United States, or the military or naval forces of the United States, or the flag of the United States, or the uniform of the army or navy of the United States into contempt, scorn, contumely or disrepute, or shall willfully utter, print, write or publish any language intended to incite, provoke or encourage resistance to the United States or to promote the cause of its enemies, * * * and whoever shall by word or act support or favor the cause of any country with which the United States is at war, or by word or act oppose the cause of the United States therein, shall be punished," etc.

It is assigned for error that a demurrer to the third count of the indictment was overruled. There are assignments of error in reference to the admission of evidence, sometimes with no exception taken thereto. There are assignments of error for refusals to charge as requested, although in each instance no exception was taken. There are assignments of error as to the charge itself, one of them covering nearly a whole page of the printed transcript; but no exceptions were taken at the time to any portion of the charge as delivered. And in examining what purports to be the transcript of record we find it contains no bill of exceptions and no certificate of any kind from the judge as to the correctness of anything contained in the transcript relating to the proceeding at the trial.

[1] This being a criminal case and tried in a common-law court, the method by which to review it is by writ of error. It has, however, been brought into this court on appeal; the defendant in his petition for appeal praying that "a transcript of the record, proceedings, and documents upon which said decree was based, duly authenticated," be sent to this court. What purports to be a transcript of the record is here; whether it is duly authenticated and can be considered is a

question which the court must decide. A writ of error is of common-law origin, and it was used to review simply alleged errors of law, committed in a common-law action. In such actions there were no errors of facts to be reviewed, as the juries were sole judges of the facts. An appeal, on the other hand, is a process of civil-law origin, and was employed to review errors of fact and of law committed by courts of equity or admiralty and maritime jurisdiction, in which the judges passed on the facts as well as the law. The distinction between the common-law jurisdiction and the equity jurisdiction is maintained in the courts of the United States, and until Congress passed Act Sept. 6, 1916, c. 448, § 4, 39 Stat. 727, if an appeal was taken in a common-law action or a writ of error in an equity suit the appellate court could not have considered it. But the act referred to, which can be found in the margin,[1] provides that an appeal shall not be dismissed solely because a writ of error should have been sued out. U. S. Compiled St. (1916) Ann. vol. 3, § 1649a, p. 3275.

Whatever the exact meaning of the above act may be, it certainly does not mean that the appellate court shall have the right, where a criminal case is brought up on an appeal, to exercise the same comprehensive powers of review which it is entitled to exercise where an appeal is rightfully taken. To hold that such was the intention would be to make the act unconstitutional, as it would make the court the final judge of the facts as well as of the law in a class of cases where there is a constitutional right to a trial by jury, whose verdict is decisive as to the facts. A possible construction may be that we are simply to regard the appeal as though a writ of error had been sued for and granted, and that we should in all other respects proceed accordingly, so that the record should be required to be certified to the court in the same manner that would be required if a writ of error, instead of an appeal, had been sued out. Another possible construction may be that the statute is not to be so narrowly construed, but, being remedial in its nature, is to be understood as meaning that if an appeal has been taken, and the record has come up, not as it would be required to come up on a writ of error, but as it would come up on an appeal, the appellate court is then to proceed in the same manner as though the case was before the court on a writ of error and a record certified as required in common-law actions. We do not decide which of these two constructions is to be given to the act. In the view we take of this case it is unimportant which construction is correct. We should reach the same conclusion under either, so far as the questions here involved are concerned; for, whether the record be regarded as a record at law or a record in chancery, it is so defective in either case that this court cannot consider it, even under the act of 1916, whatever construction be given to the act.

We shall consider the case now upon the theory that under the

---

1 "No court having power to review a judgment or decree rendered or passed by another shall dismiss a writ of error solely because an appeal should have been taken, or dismiss an appeal solely because a writ of error should have been sued out, but when such mistake or error occurs it shall disregard the same and take the action which would be appropriate if the proper appellate procedure had been followed."

act the record should come into this court in the manner it would have been required to come under a writ of error; and, as we shall see, a writ of error implies a bill of exceptions, where certain erroneous rulings are to be reviewed, and the record is here, as already stated, without a bill of exceptions.

[12] We shall first consider the necessity of a bill of exceptions, and the effect of its omission. A bill of exceptions is a formal statement in writing of the exceptions duly taken at the trial to the decisions and instructions of the judge, with so much of the testimony as is necessary to enable the court to say whether error of law was committed in respect to the particular decisions or instructions to which the exceptions were taken.

Prior to the statute of Westminster (13 Edw. I, c. 31), the only errors reviewable at common law on a writ of error were those disclosed on the face of the record; and according to the English common law the "record" consisted of the pleadings, process, verdict, and judgment. But by the statute mentioned, enacted in 1385, provision was made for a bill of exceptions by which erroneous rulings might be brought before the appellate tribunal. The provisions of that statute may be found in the margin.[2]

In 3 Wharton's Criminal Procedure (10th Ed.) § 1705, that writer declares that, so far as concerns criminal cases at common law, it has always been held in this country that bills of exceptions do not lie. He adds that in England a bill of exceptions has never been allowed at common law in cases of felony and treason. And in section 1712 he states that in most jurisdictions bills of exceptions in criminal prosecutions are now allowed by statutes of comparatively recent adoption. As the case under consideration is not civil, but criminal, how is it, then, that a bill of exceptions is necessary to raise the questions counsel ask the court to review?

The Judiciary Act of 1793 limited the appellate jurisdiction of the Supreme Court to civil cases, and until 1879 no revisory jurisdiction over the District Courts in criminal cases was given to the Circuit Courts. But the act of 1879 (Act March 3, 1879, c. 176, 20 Stat. 354), gave authority to sue out a writ of error to revise a criminal trial in the District Courts in cases where the sentence imposed was imprisonment or fine exceeding $300 in amount. And the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1087, 1133), now in force, in section 128 confers on the Circuit Courts of Appeals appellate jurisdiction to review by appeal or writ of error final decisions in the District Courts

2 "When one that is unpleaded before any of the Justices doth allege an Exception, praying that the Justices will allow it, which if they will not allow, if he that alleged the Exception do write the same Exception, and require that the Justices will put to their Seals for a Witness the Justices shall so do: and if one will not, another of the Company shall. (2) And if the King, upon Complaint made of the Justices, cause the Record to come before him, and the same Exception be not found in the Roll, and the Plaintiff shew the Exception written, with the Seal of a Justice put to, the Justice shall be commanded that he appear at a certain Day, whether to confess or deny his Seal. (3) And if the Justice cannot deny his Seal, they shall proceed to Judgment according to the same Exception, as it ought to be alleged or disallowed." Statutes at Large, vol. I, p. 99.

in all cases other than those in which appeals and writs of error may be taken direct to the Supreme Court unless otherwise provided by law. In granting that authority to the Circuit Courts of Appeals, the Code makes no distinction between decisions in civil and in criminal cases. U. S. Comp. St. (1916) Ann. vol. 2, § 1120, p. 1389. And as a judgment in an action at law was reviewable only on writ of error, it was by means of that writ that a judgment of conviction in a criminal case was to be reviewed in this court. That writ commands the trial judge to send the record and proceedings to this court, in order that it may be inspected, to find whether any error of law has been committed, and, if it has, that this court may cause further to be done therein to correct that error. Then the statute requires that there shall be returned with the writ of error, at the day and place therein mentioned, "an authenticated transcript of the record, an assignment of errors, and a prayer for reversal, with a citation to the adverse party." U. S. Compiled Statutes (1916) vol. 3, § 1653, p. 3280. But when Congress authorized the proceedings in a criminal case to be reviewed upon a writ of error, it thereby sanctioned the use of a bill of exceptions; for the writ of error brings up the "record," and the bill of exceptions is the method by which the proceedings at the trial, which otherwise would not be in the record, are made a part of it and so reviewed.

[2] A statute which authorizes a writ of error to be sued out thereby allows a bill of exceptions to be signed and used in connection therewith, for it is only through it that the erroneous rulings of the judge made at the trial upon points of law become a part of the record to be reviewed. While no act of Congress in express terms authorized the judges to sign bills of exceptions in civil or criminal cases, Congress recognized the use of such bills by providing how they are to be authenticated by the judges. U. S. Comp. St. (1916) Ann. § 1590, p. 3168. And in 1914, in providing for a review of a conviction in cases of criminal contempt, it expressly authorized the evidence in such cases to be preserved by bill of exceptions, and authorized a review of the judgment "upon writ of error in all respects as now provided." U. S. Comp. St. (1916) Ann. vol. 2, § 1245c. We know of no other express reference to a bill of exceptions in the acts of Congress.

The clerk of the court below has certified that the transcript is "a correct and complete transcript of the record." But matters which are no part of the record proper were only made a part thereof by the judge, and the inclusion of such matters into the record by the clerk of the court and his certification of the record did not authenticate them or authorize their review by the appellate tribunal. Galvey v. Baker, 5 Cl. & F. 157; Steffy v. People, 130 Ill. 98, 22 N. E. 861; Lewis v. Godman, 129 Ind. 359, 27 N. E. 563; Thompson v. Lyon, 14 Cal. 39; Whitfield v. Westbrook, 40 Miss. 311. In Lessor of Fisher v. Cockerell, 5 Pet. 248, 254, 8 L. Ed. 114 (1831), Chief Justice Marshall, speaking of the rule common to all courts exercising appellate jurisdiction, according to the course of the common law, said:

"The appellate court cannot know what evidence was given to the jury, unless it be spread on the record in proper legal manner. The unauthorized cer-

tificate of the clerk that any document was read, or any evidence given, to the jury, cannot make that document or that evidence a part of the record, so as to bring it to the cognizance of this court."

The transcript contains what the parties call a "Stipulation re Contents of Record," in which it is stipulated that in connection with the "appeal" to this court the record shall contain certain counts of the indictment, the demurrer to the third count, the testimony of the witnesses, certain exhibits and motions, the requests to charge, and the assignments of errors. It is to be observed of this stipulation that the parties have simply stipulated that the record shall contain certain matter, as, for example, "the testimony of the following witnesses." It is not even a stipulation that the testimony and rulings which appear in the transcript are correct. But, irrespective of the character of the particular stipulation, it must be said that a stipulation does not make the matter so stipulated a part of the record. It cannot be regarded as "an agreed statement of facts."

The Supreme Court has said that a writ of error may bring up "an agreed statement of facts," without a bill of exceptions. But that is where the parties after issue joined agree upon the facts and submit the statement to the trial court in the form of a special case for its judgment without proceeding to trial. Where this was done, it was the rule in England that there could be no writ of error, as an agreed case never was a part of the record, so that there was nothing upon the record upon which an appellate tribunal could act. Mr. Justice Blackstone in his Commentaries (volume 3, p. 378), in speaking of this, said:

"Nothing appears upon the record, but the general verdict; whereby the parties are precluded from the benefit of a writ of error."

This matter was referred to at some length in United States v. Eliason, 16 Pet. 291, 299, 300, 10 L. Ed. 968, and the court declared that in the United States a writ of error could be brought upon an agreed case, it being authorized by the long-established practice of this country. But clearly the stipulation of counsel which is contained in the record of this case bears no resemblance to "an agreed statement of facts," within the doctrine stated in United States v. Eliason, supra.

[3] And where there has been an actual trial the general rule seems to have been that the parties were not at liberty to substitute a written stipulation or agreed statement of facts as to what occurred at the trial in lieu of the bill of exceptions required. Wessels v. Beeman, 66 Mich. 343, 33 N. W. 510; Pearce v. Clements, 73 Ala. 257; State v. Weiskittle, 61 Md. 48; Richardson v. State, 28 Fla. 350, 9 South. 704; Herbison v. Taylor, 29 Neb. 217, 45 N. W. 626. In Houlehan v. Rassler, 73 Wis. 559, 41 N. W. 720, it was held that papers may form a bill of exceptions by stipulation of attorneys when ordered by the court to be made part of the record.

In Inglee v. Coolidge, 2 Wheat. 363, 4 L. Ed. 261, decided 100 years ago, there was no bill of exceptions, but the transcript contained the trial judge's report of the evidence. Mr. Webster argued that it

could not be considered any part of the record, and that the matter objected to should have been put on the record by a bill of exceptions, and, that not having been done, the writ should be dismissed. That course was pursued, and Mr. Justice Story stated that all the Justices were unanimously of the opinion that the report of the judge could not be considered as a part of the record.

In Suydam v. Williamson, 20 How. 427, 437, 15 L. Ed. 978 (1857), the transcript contained what purported to be all the evidence introduced at the trial, that given on behalf of the defendant and that given on behalf of the plaintiffs, and certain offers of proof on the part of the plaintiffs which were objected to by the defendant and excluded by the court. This mass of evidence filled 60 pages of the transcript. It was in the form of a report by the judge who tried the case. It was signed by him and under his seal. But the court declined to consider it, because it was not a bill of exceptions. And the court declared:

"And we also say that this court cannot so far depart from the settled practice and regular course of proceeding as to give an effect to the paper which neither its contents nor terms would warrant."

There are other cases decided by the same court to the same effect and cited in the opinion.

[4] The general rule has been that in actions at law evidence introduced, or offered and rejected, at the trial, and rulings thereon, can be brought before the appellate court only by a bill of exceptions. In Porto Rico v. Emmanuel, 235 U. S. 251, 255, 35 Sup. Ct. 33, 35 (59 L. Ed. 215), the court declared that:

"In the absence of a bill of exceptions, questions respecting the admissibility of evidence are of course excluded from our consideration, and the review is confined to what appears upon the face of the pleadings and the findings. Rosaly v. Graham, 227 U. S. 584, 590 [33 Sup. Ct. 333, 57 L. Ed. 655], and cases cited."

And see England v. Gebhardt, 112 U. S. 502, 505, 5 Sup. Ct. 287, 28 L. Ed. 811; Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Berly v. Taylor, 5 Hill (N. Y.) 579; Litsey v. Moffett, 29 Kan. 507; Lee v. Mound Station, 118 Ill. 304, 8 N. E. 759; Waddell v. Cunningham, 27 Fla. 477, 8 South. 643; Joiner v. Van Alstyne, 20 Neb. 578, 30 N. W. 944.

Unless a statute otherwise provided, a bill of exceptions has been the sole mode by which instructions and requests to charge could be brought into the appellate court for review. In Stanton v. Embry, 93 U. S. 548, 555, 23 L. Ed. 983, the court said that unless the exceptions to the rulings of the court in the progress of the trial, or to the instructions given to the jury are signed by the judge, or sealed with his seal, it is not a bill of exceptions within the meaning of the statute authorizing such proceeding, nor does it become a part of the record. The seal of the judge is no longer required, but his signature or that of another judge of the court is all that is required in accordance with the statute. U. S. Compiled Statutes (1916) Ann. vol. 3, § 1590. In Storm v. United States, 94 U. S. 76, 24 L. Ed. 42, the court declared that the instructions given by the court to the jury are no part of the record, unless made so by a proper bill of excep-

tions. And see Struthers v. Drexel, 122 U. S. 487, 491, 7 Sup. Ct. 1293, 30 L. Ed. 1216; Anderson v. Fitzgerald, 4 H. L. Cas. 484; Wagar v. Peak, 22 Mich. 368; Toledo v. Preston, 50 Ohio St. 361, 34 N. E. 353; Collins v. Breen, 75 Wis. 606, 44 N. W. 769; Forest v. Crenshaw, 81 Ky. 51.

[5] The rule has been elementary, and applicable in criminal proceedings as well as in civil, that a ruling of the trial court upon the admissibility of evidence will not be reviewed in the appellate court, unless the bill of exceptions shows that an exception was taken after the objection was overruled. Commonwealth v. Foster, 182 Mass. 276, 65 N. E. 391; People v. Murphy, 135 N. Y. 450, 32 N. E. 138; Bond v. State, 103 Ala. 90, 15 South. 893; Hunt v. State, 116 Ga. 615, 42 S. E. 1004; Moeck v. People, 100 Ill. 242, 39 Am. Rep. 38; State v. Lynn, 169 Mo. 664, 70 S. W. 127; Commonwealth v. McGowan, 189 Pa. 641, 42 Atl. 365, 69 Am. St. Rep. 836; People v. Miller, 122 Cal. 84, 54 Pac. 523; Kearney v. State, 46 Md. 422; State v. Powers, 72 Vt. 168, 47 Atl. 830; Post v. Hartford St. Railway, 72 Conn. 362, 44 Atl. 547. In Michigan Insurance Bank v. Eldred, 143 U. S. 293, 298, 12 Sup. Ct. 450, 36 L. Ed. 162, Mr. Justice Gray stated the rule and declared that by the uniform course of decision no exceptions to rulings could be considered, unless they were taken at the trial and were also embodied in a formal bill of exceptions. And in United States v. United States Fidelity Co., 236 U. S. 512, 529, 35 Sup. Ct. 298, 59 L. Ed. 696, the court pointed out that the essential function of an exception was to direct the mind of the trial judge to the precise point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling, if convinced of error, so that mistrials due to inadvertent errors may be obviated. The court held, therefore, that an exception furnishes no basis for reversal upon any ground other than the one specifically called to the attention of the trial court.

[6] And the courts of the United States have applied the rule, even if the courts of the state within which they were sitting did not; for it is well settled that the rules and practice which prevail in the state courts do not apply to proceedings in the federal court. The act of Congress (section 1537, vol. 3, U. S. Compiled Statutes 1916 Ann.), directing that the practice, pleadings, and forms and modes of proceeding in the District Courts should conform to the practice, pleadings, and forms and modes of proceeding in the courts of the state has no application to bills of exceptions, or to the mode of reviewing a decision once made in the District Court. Chateaugay Iron Co., Petitioner, 128 U. S. 544, 553, 9 Sup. Ct. 150, 32 L. Ed. 508; N. Y. & N. E. R. Co. v. Hyde, 56 Fed. 188, 5 C. C. A. 461.

In most jurisdictions it is the rule that the appellate court does not review, even in a criminal case, an erroneous instruction or an erroneous refusal to charge, unless the same was excepted to at the trial. People v. Burt, 170 N. Y. 560, 62 N. E. 1099; Knoll v. State, 55 Wis. 249, 12 N. W. 369, 42 Am. Rep. 704; Steffy v. People, 130 Ill. 98, 22 N. E. 861; Bush v. State, 47 Neb. 642, 66 N. W. 638; Barnes v. State, 113 Ga. 189, 38 S. E. 396; State v. Williams, 115 Iowa, 97, 88 N. W.

194; State v. Vinso, 171 Mo. 576, 71 S. W. 1034. The rule has been applied in the federal as well as in the state courts. Myers v. Pittsburgh Coal Co., 233 U. S. 184, 195, 34 Sup. Ct. 559, 58 L. Ed. 906; Humes v. United States, 170 U. S. 210, 212, 18 Sup. Ct. 602, 42 L. Ed. 1011; St. Clair v. United States, 154 U. S. 134, 153, 14 Sup. Ct. 1002, 38 L. Ed. 936; Tucker v. United States, 151 U. S. 164, 14 Sup. Ct. 299, 38 L. Ed. 112.

Motions made during the progress of a cause and the rulings of the court granting or denying them could be brought before the appellate court only by a bill of exceptions. Wiggins v. Witherington, 96 Ala. 535, 11 South. 539; White v. Douglas, 51 Kan. 402, 32 Pac. 1092; Fleming v. Bainbridge, 84 .Ga. 622, 10 S. E. 1098; Richardson v. Eureka, 92 Cal. 64, 28 Pac. 102; Burns v. People, 126 Ill. 284, 18 N. E. 550.

From what has been said it is evident that, unless the established rules of law have been changed by recent legislation, this court is not at liberty to review the evidence, to see whether any testimony has been erroneously admitted, or whether there were errors in the charge as actually given, or whether any requests to charge were improperly refused. In Struthers v. Drexel, supra, the Supreme Court declared that the matters not spread upon the record in legal manner are not in the record for any purpose; and it is also evident that, if the testimony and the charge and the requests to charge had been put into the record by a bill of exceptions, the court would still be powerless to review any ordinary errors therein for want of exceptions duly taken.

[7] But we find that Congress by an act approved on February 26, 1919 (40 Stat. 1181, c. 48), has amended section 269 of the Judicial Code by providing that:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

It becomes necessary therefore to consider to what extent this act has modified the principles above laid down. We are to examine "the entire record before the court." Now, we have seen that under the decisions of the Supreme Court the testimony and the charge and refusals of requests to charge are not in the record before the court, although they may be found in the transcript, unless they have been put into the record by a bill of exceptions. We are not prepared to say that it was the intention of the Congress, by the act recently passed, to make bills of exceptions no longer necessary, and that hereafter we are to hold that any matter found in the transcript is to be regarded as in the record, even though the trial judge has not examined and certified to its correctness by putting his signature to a bill of exceptions. We do not think that such could have been the intention. The "record" to which the act refers is that which is legally the record, and in examining that we are to disregard "technical errors, defects or exceptions which do not affect the substantial rights of the parties." But matters which could not have been regarded as in the record prior

to the passage of the act are not to be held to be in the record since the passage of the act. We are still unable to review the evidence, the charge, and the refusals to charge.

[8] The indictment, however, is properly in this court, as it is a part of the record, and needs no bill of exceptions to make it such. And no bill of exceptions is necessary to make the demurrer to the third count a part of the record proper. State v. Strong, 6 Iowa, 72; State v. Day, 52 Ind. 483; Ex parte Knight, 61 Ala. 482; 3 Encyc. Pleading & Practice, p. 407, note. We therefore set forth in the beginning of this opinion the counts upon which the defendant was tried, and the part of the Espionage Act for the violation of which the indictment was found. It seems to be conceded that the statute is constitutional, and indeed its constitutionality has been established by the Supreme Court. See Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470; Debs v. United States, 249 U. S. 211, 39 Sup. Ct. 252, 63 L. Ed. 566; and Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. Ed. 561. These cases were decided by that court on the day this case was argued, and they have not yet been officially reported; and the indictment is to be considered in the light of what the court declared in the Schenck Case. It there said:

"We admit that in many places and in ordinary times the defendants in saying all that was said in the circular would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done. * * * The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force. * * * The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree. When a nation is at war many things that might be said in time of peace are such a hindrance to its effort that their utterance will not be endured so long as men fight and that no court could regard them as protected by any constitutional right."

[9] Now, whether, in view of the above statement, the third count should be held good or bad, is under the circumstances not material to the disposition we must make of this case; for the fourth and seventh counts are good and sufficient and no demurrer was interposed as to them. The verdict of the jury is, like the indictment, a part of the record, and is not dependent on a bill of exceptions; and it appears that the jury found the defendant guilty upon all three counts. The judgment is in like manner a part of the record, but it has not been included in the transcript. As it does not affirmatively appear that the court, in imposing sentence, directed that the sentences were to run successively we need not assume that such a direction was given; and, if it was not given, the invalidity of the third count, if it be invalid, would not justify a reversal, for unless the court imposing sentence under each of several counts, does not direct that imprisonment under one count is not to run concurrently with imprisonment under the others, the punishments under all the counts are executed simultaneously, and the fact that one of the

counts is defective does not entitle the defendant to a release from imprisonment. Reg. v. King (1897) 18 Cox C. C. 447; In re Breton, 93 Me. 39, 44 Atl. 125, 74 Am. St. Rep. 335; In re Jackson, 3 Mac-Arthur (D. C.) 24.

[10] We may point out, although the question is not directly involved in this case, that it is the law of the federal courts, as it is of state courts as well, that where an indictment contains good and bad counts, and a general verdict is returned, the verdict will be referred to the good counts, if sustained by the evidence, and the judgment of the court will be affirmed. Dunbar v. United States, 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390; State v. Stebbins, 29 Conn. 463, 79 Am. Dec. 223; Hope v. People, 83 N. Y. 418, 38 Am. Rep. 460; Mead v. State, 53 N. J. Law, 601, 23 Atl. 264; Commonwealth v. Howe, 13 Gray (Mass.) 26.

[11] We come now to consider whether a different conclusion would be reached if the act of 1916 should be construed as authorizing the appellate court to review the record in a criminal case which is brought here on appeal where the record comes up as it would come up in appeals in equity cases. A bill of exceptions, so necessary in common-law actions coming up on a writ of error, was unknown to equity. Chief Justice Taney said, in Ex parte Story, 12 Pet. 339, 9 L. Ed. 1108: "A bill of exceptions is altogether unknown in chancery practice." And in Johnson v. Harmon, 94 U. S. 371, 24 L. Ed. 271, Mr. Justice Bradley said: "A bill of exceptions cannot be taken on the trial of a feigned issue directed by a court of equity, or, if taken, can only be used on a motion for a new trial made to said court." Watts v. Starke, 101 U. S. 247, 250, 25 L. Ed. 826.

The Supreme Court has the power to regulate the practice in suits in equity in the federal courts. This it has done by the equity rules promulgated on November 4, 1912.[3] The matter of the record on appeal is regulated by rule 75. And the record which we find in the transcript does not conform to the regulations there prescribed. It is provided in paragraph "b" of the rule referred to:

"That the evidence to be included in the record shall not be set forth in full, but shall be stated in simple and condensed form, all parts not essential to the decisions of the questions presented by the appeal being omitted and the testimony of witnesses being stated only in narrative form, save that if either party desires it, and the court or judge so directs, any part of the testimony shall be reproduced in the exact words of the witness."

None of the testimony in the record has been reduced to narrative form, but all of it appears in the exact words of the witnesses, and there is nothing to show that the court or judge directed that any portion of it should be in the exact words of the witnesses. The rule also provides that:

"If the statement be true, complete and properly prepared, it shall be approved by the court or judge, and if it be not true, complete or properly prepared, it shall be made so under the direction of the court or judge and shall then be approved. When approved, it shall be filed in the clerk's office and become a part of the record for the purposes of the appeal."

---

3 226 U. S. 629, 33 Sup. Ct. xix; 198 Fed. xix, 115 C. C. A. xix.

It is evident that it was not intended that the testimony should become a part of the record without the approval of the judge, and until it has been approved by him it is not a part of the record for the purposes of the appeal. And as the testimony in the transcript in this case is not there in conformity to rule 75 we cannot consider it.

Rule 77 authorizes questions presented by an appeal to be presented upon an agreed statement, when it can be done without an examination of all the pleadings and evidence. But this can only be done "with the approval of the District Court or the judge thereof." There is nothing of that sort in this record.

Rule 75 deals only with the testimony. It does not expressly refer to rulings made by the judge during the trial, either on motions or as to the admission of evidence, or refusals to charge or as to the charge as actually given. Prior to rule 75 testimony in an equity case had to be made in some way a part of the record. It did not become a part of the record simply because it had been given or received in the court below, even though it found its way into the transcript. That appears in Blease v. Garlington, 92 U. S. 1–7, 23 L. Ed. 521, where Chief Justice Waite, writing for the court, stated that it would not say that since the Revised Statutes the courts under the operation of the rule might not in their discretion in an equity suit permit the examination of witnesses orally in open court, adding that, if such practice is adopted in any case, the testimony presented in that form must be taken down, or its substance stated in writing, "and made a part of the record, or it will be entirely disregarded here on appeal." But there is nothing in the opinion which indicates how the testimony was to be made a part of the record.

The matter was considered at length in Southern Building & Loan Association v. Carey (C. C.) 117 Fed. 325 (1902). The court found it a perplexing subject. "How is that testimony to be taken," asks Judge Hammond, "and transmitted to the appellate court? Strange to say, I do not find that question answered by the cases or the books on practice or the rules, any more than the one we have in hand,[4] and the necessity for a rule governing the practice is apparent." Present rule 75 no doubt was intended to provide an answer to the question above asked.

In Street's Federal Equity Practice, vol. 2, § 1629, which was published prior to the adoption of the present rules, that writer says, in speaking of the testimony taken in open court, that "such testimony should be expressly incorporated in the record by an order of the court and sent up on appeal, in order that the action of the court in accepting or rejecting the testimony may be reviewed." It "should be certified by the court as a part of the record." Then in section 1630 he says that though, strictly speaking, the bill of exceptions in an equity case is unknown, he declares that an order of the court directing that the evidence should be made a part of the record, and directing it to be sent up on appeal, will have the effect of a bill of exceptions.

---

[4] The reference was to old equity rule 67 (149 U. S. 793, 13 Sup. Ct. iii), the last paragraph.

In Whitehouse's Equity Practice, vol. 1, § 514, the writer states that in preparing an equity case for an appellate court, after the evidence has been reduced to typewritten form, it "is approved by the chancellor or presiding justice, and the whole record thus made up from the pleadings and evidence is then certified by the clerk to be correct, and each printed copy by him as a true copy, and the record is transmitted to the clerk of the appellate court." He is not speaking specifically of the practice in the federal courts, but in the courts of the United States generally—state and federal. And we may add that we know of no way of getting into the record on an appeal the requests to charge a jury and the instructions to the jury, when those requests and instructions have not been certified by the judge.

From what has been said it sufficiently appears that, whatever construction is to be placed on the act of 1916, the record in this case is not sufficient to enable us to pass upon the admissibility of evidence, or the alleged errors in the instructions as given, or in the failure to instruct as requested.

We may add that, whatever may or may not have been the practice in this circuit prior to 1912 in the matter of preparing the record in an appeal, the subject is governed by rules 75, 76, and 77, as framed by the Supreme Court, and that there is no power in this court to exempt a particular case from their operation. The rules, having been promulgated under the authority of an act of Congress, have the authority of statutory regulation. Winter v. Ludlow, 104 Fed. Cas. No. 17,891.

In conclusion it may be said that under rule 8 of the Rules of the Supreme Court, promulgated by the court on December 22, 1911,[5] a bill of exceptions certified by the judge is no longer required, and that matters may get into the record by stipulation of counsel or the clerk's certificate. This seems to us an utterly erroneous view. That it is unsound conclusively appears from the decisions of the court made since the rules were promulgated. In People of Porto Rico v. Emmanuel, supra, decided in 1914, three years after the rules were promulgated, the court, as we have before pointed out, declared that in the absence of a bill of exceptions questions of the admissibility of evidence are excluded, and the review is confined to what appears upon the face of the pleadings and the findings. And in Cerecedo v. United States, 239 U. S. 1, 3, 36 Sup. Ct. 3, 4 (60 L. Ed. 113), decided on October 25, 1915, the court said:

"There is no bill of exceptions in the record; and nothing which enables us to lawfully ascertain the existence of the constitutional questions relied upon."

And after saying that because of the absence of the bill of exceptions there was nothing before the court it added:

"Even indulging, for the sake of the argument only, in the assumption of the correctness of the proposition urged that an extraordinary discretion might exist in some extreme case to supply the entire absence of a bill of exceptions, we see no ground whatever for the premise that this is a case of that character."

---

[5] 222 U. S. 669, 32 Sup. Ct. vi.

In view of these decisions it is idle to say that on a writ of error a bill of exceptions can be dispensed with since rule 8 was promulgated; and if it cannot be dispensed with it is as true now as it ever was that matters of evidence and requests to charge and the instructions do not get into the "record" without a bill of exceptions where there is a writ of error, and neither the act of 1916 nor the act of 1919 dispenses with the necessity of getting matters to be reviewed into the "record" by the action of the judge.

We may, however, say in passing that on the argument in this court great stress was laid on the admission in evidence of certain cards found in the defendant's room which had on their backs, in what was alleged to be defendant's handwriting, statements which disclosed a hostile or unfriendly feeling for the United States. The writing on one was:

"Wilson is the meanest coward that ever ran around on two legs. God's curse upon American—German-Americans, too."

That on the other was:

"Germany did not break her pledges. You have not won yet. One German is as good as 299 Americans. Americans have not got any blood; they are milk and water creatures."

While for reasons already stated we do not feel called upon to notice any alleged errors in the admission of evidence, we may concede that the reasons given for admitting the cards were erroneous. They could not properly be received, either on the question of credibility or for the purpose of showing that defendant made the statements the indictment charged him with having made. But in our opinion it is equally plain that the cards were admissible for the purpose of showing intent, or motive, which has been called the mother of intent; and, being admissible it is of no consequence that some other reason not tenable was assigned for the admission of the testimony at the time.

This court has recently had occasion to speak plainly concerning the record which has been presented here in two criminal cases brought up on writs of error. In one of them, Linn v. United States, 251 Fed. 476, 163 C. C. A. 470, there was no true bill of exceptions, although there was something which purported to be a bill and was settled and allowed by the District Judge as such. In the other, Fraina v. United States, 255 Fed. 28, —— C. C. A. ——, there was a transcript of the stenographer's minutes which the parties called a bill of exceptions, and this court condemned. And in the present case, which is wrongly brought here upon an appeal, we neither have a bill of exceptions nor anything else which we can legally notice, unless it be the sufficiency of one of the counts of the indictment. We feel obliged to call attention to this matter again, so that in subsequent cases in this court the rights of parties may not be prejudiced or lost by the failure to get before the court a record which at least raises the questions which it is desired to have decided.

Judgment affirmed.

WARD, Circuit Judge (dissenting). The construction of the Act of September 6, 1916, § 4 (Comp. St. § 1649a), is so important that I feel obliged to express an opinion about it. These provisions are as follows:

Act of 1916. "Sec. 4. No court having power to review a judgment or decree rendered or passed by another shall dismiss a writ of error solely because an appeal should have been taken, or dismiss an appeal solely because a writ of error should have been sued out, but when such mistake or error occurs it shall disregard the same and take the action which would be appropriate if the proper appellate procedure had been followed."

This act is obviously remedial and entitled on familiar principles to a liberal construction. It may be construed as meaning merely that an appeal as a formal paper should be treated as if it were in the form of a writ of error, and that a writ of error as a formal paper should be treated as if it were in the form of an appeal; the wrong process in either case having been used. If so, the appellate court, where an appeal has been taken in an action at law, cannot consider exceptions taken at the trial, although the testimony and exceptions are brought before it in a manner proper for an appeal, because they are not brought up by a bill of exceptions and therefore would not be technically before the court in an action at law.

I am not clear whether the opinion of the court goes so far, and am assuming it to hold that the testimony and exceptions in this case were not before it, because the record had not been approved by the judge as required by Supreme Court equity rule 75(b). Before that rule was adopted it had never been the practice in equity to submit records to the trial judge for approval. This appears from the last rules of the Supreme Court promulgated at October term, 1911. 222 U. S. 669, 32 Sup. Ct. vi. Rule 8 (1) provides:

"1. The clerk of the court to which any writ of error may be directed shall make return of the same, by transmitting a true copy of the record, and of the assignment of errors, and of all proceedings in the case, under his hand and the seal of the court.

"In order to enable the clerk to perform such duty and for the purpose of reducing the size of transcripts of record in cases brought to this court by appeal or writ of error, by eliminating all papers not necessary to the consideration of the questions to be reviewed, it shall be the duty of the appellant or plaintiff in error or his attorney to file with the clerk of the lower court, together with proof or acknowledgment of service of a copy on the appellee or defendant in error, or his counsel, a præcipe which shall indicate the portions of the record to be incorporated into the transcript of the record on such appeal or writ of error. Should the appellee or defendant in error, or his counsel, desire additional portions of the record incorporated into the transcript of the record to be filed in this court, he shall file with the clerk of the lower court his præcipe also, within ten days thereafter (unless the time shall be enlarged by a judge of the lower court or by a justice of this court), indicating such additional portions of the record desired by him.

"The clerk of the lower court shall transmit to this court as the transcript of the record in the case only the portions of the record below designated by both parties as above provided.

"The parties or their counsel, however, may agree by written stipulation to be filed with the clerk of the lower court the portions of the record which shall constitute the transcript of record on appeal or writ of error, and the clerk in such case shall transmit only the papers designated in such stipulation.

"If this court shall find that portions of the record unnecessary to a proper

presentation of the case have been incorporated into the transcript by either party, the court may order that the whole or any part of the clerk's fee for supervising the printing and of the cost of printing the record be paid by the offending party."

It will be seen that there is no suggestion whatever of any approval of the record by the trial judge. On the contrary, it is to be made up by stipulation of the parties.

At October term, 1912 (226 U. S. 629, 33 Sup. Ct. xix; 198 Fed. xix, 115 C. C. A. xix), the new equity rules were promulgated. Rule 75 reads:

"In case of appeal:

"(a) It shall be the duty of the appellant or his solicitor to file with the clerk of the court from which the appeal is prosecuted together with proof or acknowledgment of service of a copy on the appellee or his solicitor, a præcipe which shall indicate the portions of the record to be incorporated into the transcript on such appeal. Should the appellee or his solicitor desire additional portions of the record incorporated into the transcript, he shall file with the clerk of the court his præcipe also within ten days thereafter, unless the time shall be enlarged by the court or a judge thereof, indicating such additional portions of the record desired by him.

"(b) The evidence to be included in the record shall not be set forth in full, but shall be stated in simple and condensed form, all parts not essential to the decision of the questions presented by the appeal being omitted and the testimony of witnesses being stated only in narrative form, save that if either party desires it, and the court or judge so directs, any part of the testimony shall be reproduced in the exact words of the witness. The duty of so condensing and stating the evidence shall rest primarily on the appellant, who shall prepare his statement thereof and lodge the same in the clerk's office for the examination of the other parties at or before the time of filing his præcipe under paragraph (a) of this rule. He shall also notify the other parties or their solicitors of such lodgment and shall name a time and place when he will ask the court or judge to approve the statement, the time so named to be at least ten days after such notice. At the expiration of the time named or such further time as the court or judge may allow, the statement, together with any objections made or amendments proposed by any party, shall be presented to the court or the judge, and if the statement be true, complete and properly prepared, it shall be approved by the court or judge, and if it be not true, complete or properly prepared, it shall be made so under the direction of the court or judge and shall then be approved. When approved, it shall be filed in the clerk's office and become a part of the record for the purposes of the appeal.

"(c) If any difference arise between the parties concerning directions as to the general contents of the record to be prepared on the appeal, such difference shall be submitted to the court or judge in conformity with the provisions of paragraph b of this rule and shall be covered by the directions which the court or judge may give on the subject."

Subdivisions (a) and (c), taken together, show that there need be no reference to the judge if the parties agree upon the general contents of the record. Subdivision (b), I think, comes into operation only if the parties cannot agree upon the manner in which the evidence has been condensed and the testimony reduced to narrative form. The purpose of both rules was to shorten the records and save expense in printing. The fact that the Supreme Court did not amend section 1 of rule 8 after new equity rule 75 had been adopted, and expressed no intention of changing the former practice in rule 75, convinces me that no change was intended. Thus both rules may be construed con-

sistently with each other. The practice in the Southern district of New York has been in accordance with this view. The attorneys in equity causes almost without exception agree in writing upon the contents of the record without submitting it to the judge for approval. If the court is right in saying that the testimony and exceptions are not brought before it without such approval, it follows that for years we have been deciding equity causes upon the law and facts, so far as they depend upon the testimony contained in the record, without there being any testimony legally before us. Needless to say that the subject is one for grave reflection.

The attorney's intention to raise the exception in the present case is clear, because he has laid the testimony and the exception before the court in a record containing the written stipulation of the attorneys which the clerk certifies the parties have agreed to be correct and complete. The record is good within the equity rules.

Likewise it may be noted in favor of the practice that in admiralty causes it has never been the practice to submit the record for allowance. Supreme Court rule in admiralty LII(3), 29 Sup. Ct. xlv, expressly provides that the clerk of the District Court shall omit from the record any pleading, testimony or exhibits the parties by written stipulation of their proctors agree to omit and our rule in admiralty IV (3), 29 Sup. Ct. xxxix, contains a similar provision.

The act of 1916 proceeds further to require us to "take the action which would be appropriate if the proper appellate procedure had been followed." I read this to mean that a party shall not suffer for any procedural mistake of his attorney, and that we shall treat the record on appeal, so far as questions of law are concerned, as if he had been aware that a bill of exceptions was necessary to preserve the exceptions taken at the trial and had sued out a writ of error accompanied by the usual bill of exceptions.

I fully recognize that a writ of error sued out in an action at law does not bring exceptions taken in the course of the trial before the court, unless it is accompanied by a bill of exceptions signed by the trial judge. I also admit that neither Supreme Court rule 8 nor the act of 1916 makes any change in the law in this respect. The act of 1916 covers, not cases of regular, but of erroneous, procedure, and the precise question we are to determine is whether, when an appeal has been duly perfected in an action at law, exceptions taken at the trial and appearing in the record are to be disregarded, because no bill of exceptions has been signed by the judge, as required in an action at law.